Court of Chancery. Sussex. December, 1821.

*Ridgely's Notebook III, 560.*

## JOHN REED v. JONATHAN IZBURN.

Court of Chancery. New Castle. In Vacation. January, 1822.

*Ridgely's Notebook III, 564.*

The following affidavit and petition was received by the Chancellor about the [——] [1] day of January, 1822:

State of Delaware, New Castle County, ss.

Before Joseph Roberts, Register in Chancery for said county, personally appeared John Reed of White Clay Creek Hundred in the county aforesaid, who being duly sworn deposeth and saith, that by virtue of a writ of *alias venditioni exponas* issued from the Supreme Court of the State of Delaware at the suit of the President, Directors and Company of the Farmers' Bank against James Bradford, the Sheriff of the said county on the 29th day of October 1821, exposed to public sale a certain tract or farm of land in the hundred and county aforesaid, the property of the said James Bradford and computed to contain 143 acres more or less, of which this deponent became the purchaser, and has satisfied and complied with the terms of said sale, of which the said Sheriff made return to the October Term of the said

---

[1] Blank in manuscript.

court last past, and which remains valid and unreversed. And this deponent further saith that at the time of the said sale, and ever since a certain Jonathan Izburn occupied the said farm by virtue of a certain article of agreement, as this deponent is informed and believes, from the assignees of the said Bradford, but without any title or interest in the said lands, and without having complied with the said article of agreement, which was made and executed subsequent and subject to the judgment on which the said writ of *alias venditioni exponas* was issued. And the deponent further saith that since the said sale a number of trees has been cut and felled on said farm (as this deponent has reason to believe from his own observation) by the said Jonathan Izburn, or persons acting by his directions; and from conversation between this deponent and the said Izburn since the said sale, he believes and is apprehensive that the said Izburn intends to commit further waste on said farm by felling and cutting down other trees and timber and carrying them away to the great injury of the said farm, and damage of this deponent.

(Signed) *John Reed.*

Sworn to and subscribed January 5, 1822, before:
(Signed) *Joseph Roberts,* Register in Chancery.

―――――

Upon the facts stated in the foregoing affidavit the said John Reed prays that an injunction may issue, directed to the said Jonathan Izburn commanding and enjoining him to stay and cease from any further felling of timber or trees upon the aforesaid tract of land either by himself or by either or any of his servants or agents, and from removing or carrying to be removed by them or either of his servants or agents any wood or timber now felled upon the said tract of land.

(Signed) *John Reed.*

―――――

To this application THE CHANCELLOR returned the following answer directed to John Wales, Esq., solicitor of John Reed.

January 15, 1822.

Sir,

The affidavit of John Reed *v.* Jonathan Izburn has not laid a sufficient ground for a writ of injunction.

First, the title of John Reed is not set out. The affidavit states that the land sold by the Sheriff to Reed was the property of James Bradford. It does not appear from this what estate Bradford had in the land, nor, of course, what estate was purchased by Reed.

Second, it does not appear that the Sheriff has conveyed any title to Reed. The purchaser says that he complied with the terms of sale; but what these terms were do not appear.

Third, it appears from the affidavit that Izburn is in possession under an adverse title, or by some agreement by which he claims to hold the land against Reed. Does not the plaintiff then, by this affidavit, state himself out of the court as to the injunction, according to Lord Eldon, 6 Ves. Jr. 51, *Pillsworth v. Hopton?* See 4 Burr. 2324, 2400; 1 Bro.C.C. 57; 6 Ves.Jr. 789; 8 Ves.Jr. 89; Mitf.Pl. 123, 124; Coop.Eq.Pl. 149, 150.

Fourth, the affidavit does not state that waste has been committed, but that trees have been cut and felled since the sale, as the deponent has reason to believe from his own observation. This is not an affidavit that trees were cut and felled since the sale, but it is the belief or conjecture of the deponent. Suppose he were mistaken in his observation as to the time the trees were cut, which is possible. Neither does it bring the charge home to Izburn. It is still conjecture that Izburn or his servants felled the trees. Besides, trees might have been felled for firewood and for the necessary purposes of the farm. The mere act of cutting trees will not make a case of waste.

Fifth, it is not stated that Izburn actually threatens to commit further waste; but the plaintiff only believes and apprehends from conversation that he will. This is not sufficient. There should be actual threats, or something done since the sale, indicating an intention to commit waste. What were the threats? What has he said or done? The facts, or words, or threats, should be stated for the Chancellor to judge and not to be obliged to rest on the conclusions of the plaintiff.

No objection is made as to form, but the words, "who being duly sworn," are very loose, and are the assertion of the Register, he judging whether the party was duly sworn. The method preferred is, "who being sworn on the Holy Evangelists of Almighty God," being equivalent to the form said by Lord Hale to be proper, *viz, tactis sacrosantis Dei Evangeliis,* when the person sworn is a Christian.

I should be glad to have a bill with the whole case, before an injunction (where an adverse title, be it what it may, is alleged) is ordered.

I am, Sir, your most obedient and very humble servant,

*Nicholas Ridgely.*

NOTE. 4 Burr. 2324, 2400, injunctions to stay waste are never granted but upon a clear right. If moved for on filing the bill, the right must appear clearly by affidavit. 1 Bro.C.C. 57, *White-legg v. Whitelegg,* motion for an injunction to stay waste upon an affidavit generally that plaintiff was entitled to the fee simple of the estate, and that was committed. Refused by Lord Chancellor, for a particular title must be set out; upon this being done, and the only opposition by a similar affidavit to the first on the part of the defendant, motion granted. 6 Ves.Jr. 51, *Pillsworth v. Hopton,* injunction to restrain waste not granted against defendant in possession claiming by an adverse title. 6 Ves.Jr. 789, injunction not granted unless there is positive evidence of title. See 8 Ves.Jr. 89. 7 Ves.Jr. 309, injunction cannot be had upon the mere apprehension that the defendant means to do a great deal of mischief, by going etc. There must be some fact or threat, not mere belief. 7 Ves.Jr. 417, "I never would grant an injunction upon an affidavit stating, that the deponent verily believes, the defendant is about to cut timber," Lord Eldon.